**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Joshua Champion,<br>3144 Kelly St SW<br>Washington, DC 20032<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Does 1-10,<br><br>　　　　　Defendants. | Civil Action No. |

**PLAINTIFF'S COMPLAINT**

**INTRODUCTION**

1. Like most Americans, Joshua Champion ("Joshua") has a mobile residential telephone.

2. Being mobile, Joshua takes his phone everywhere he goes. He uses his phone to receive and make important phone calls, to get emergency information, and to text message family members and friends. Joshua uses his phone regularly for his personal enjoyment.

3. But Joshua's privacy and the use of his phone has been invaded by a telephone spammer who has sent 1,549 telemarketing text messages to Joshua over the last two years.

4. Not only have these text messages been sent without consent, but each text message comes from a different telephone number making it impossible to block the spammer.

5. Joshua has no relationship with this spammer, has no account with this spammer, has never provided his number to this spammer, and has never consented to this spammer sending him any type of communication.

6. Joshua has tried to eliminate the harassment and invasion of privacy from unauthorized text messages by registering his number on the National Do Not Call Registry("DNCR"), but even that did not work.

7. The spammer behind these text messages knows that recipients have not consented to receive the messages, but the spammer has done nothing to change its practices.

8. Instead, the spammer continues to blast text messages without caring if consent was obtained or if the recipient was on the DNCR.

9. "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ("TCPA"). But as every American knows, there is companies—like the defendant in this case—who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021)

10. Because of this spammer's continuing violations of the law, Joshua brings this action to enjoin these abusive practices, and for damages.

## JURISDICTION AND VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA which is a federal statute.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the text messages giving rise to this lawsuit were received in this district.

13. This Court has personal jurisdiction over Defendants because their conduct intentionally targeted Joshua in the District of Columbia.

## PARTIES

14. Plaintiff Joshua Champion is an individual and is a resident of the District of Columbia.

15. Defendants Does 1-10 ("Does 1-10") are currently unknown individuals or entities who sent the text messages or are otherwise liable for the text messages sent to Joshua. These Defendants have concealed their identities and they can only be identified via discovery.

## FACTUAL ALLEGATIONS

16. Joshua has had his privacy and the use of his phone invaded by the non-emergency telemarketing text messages from Does 1-10.

17. Joshua is the residential subscriber of the cell phone number 202-492-0336. Joshua uses this number only for personal use and does not use it in any business.

18. Joshua registered 202-492-0336 on the DNCR to stop telephone solicitations.

19. Does 1-10 knowingly and willfully texted Joshua at least 1,549 times. Here are three examples:

    i. A $2,599 purchase was made from your account, on 10/17. If you do not recognize it, go here, http://vh.stamn7top.com/c8y/c-TZzd_

    - Sent October 19, 2021 from 502-904-1137

    ii. Your driving fiIe's been reviewed & your $10,602 driver-safety payment, is on the way! Get it, here http://filegsafe.com/rnc/c-TZzd_

    - Sent October 13, 2021 from 401-764-9278

    iii. Sam's C|ub is giving you a courtesy, 12 month membership + $300. Must be activated by, tomorrow http://clubhoct.com/dvd/c-TZzd_

    - Sent October 13, 2021 from 260-230-3031

20. When Does 1-10 sent the 1,549 text messages, Joshua's number 202-492-0336 was registered on the DNCR.

21. Joshua never provided his number 202-492-0336 to Does 1-10, never had a relationship with Does 1-10, and never gave permission to Does 1-10 to contact him in any way.

22. The 202 area code serves the District of Columbia. Does 1-10 knew that based on the 202 area code Joshua likely lives in the District of Columbia and the text messages sent would be received in the District of Columbia.

23. The text messages advertised the commercial availability of car insurance, debt relief service, watches, electronic devices, and more. The text messages also encouraged the purchase of these services and products.

24. The text messages did not disclose the name of the individual nor the name of the entity on whose behalf the text messages were sent.

25.  Sometimes the text messages stated they were from CVS, Joshua's cell phone provider, Sam's Club, etc. However, these assertions about who the messages were from were simply lies to trick Joshua to click on the links. The URLs went to pages that promoted gimmicky sales offers and were not from any of the alleged companies.

26.  Not only did Does 1-10 fail to disclose their identity, but they also went to great lengths to hide their identity. Each time a new text message came in, the URLs initially redirected to a sales page. However, after a few days, the URLs redirected to generic websites such as www.google.com. Does 1-10 purposefully did this to hide their identity and to prevent getting caught.

27.  And not only did Does 1-10 not want to get caught, they also did not want to get blocked. Does 1-10 sent the text messages from 1,540 different phone numbers! This is obviously not something a telemarketer does when the recipients have consented to receive marketing. Does 1-10 sent the text messages from 1,540 different phone numbers to prevent recipients from blocking the text messages.

28.  In June of 2021, Joshua replied to ten different text messages from Does 1-10 in which Joshua asked "Who is this?" Nobody ever responded, indicating Does 1-10 abandon 100% of every text message call they sent out.

29.  Joshua has so far been unable to ascertain the identity of the spammer sending these text messages. Joshua has identified phone carriers, domain registrars, and other third parties who have discoverable information related to the identity of the spammer. Subpoenas to these parties should reveal the identity of the spammer.

30.  The text messages were sent using an Automatic Telephone Dialing System ("ATDS"), and/or an artificial or prerecorded voice message. This is based on the following facts:

    i.    the text messages were not personalized;

    ii.    when Joshua responded to the text messages nobody replied;

    iii.    the text messages came from 1,540 different phone numbers;

      iv.      the text messages utilized 1,496 different unique domains;

      v.      the telephone numbers that the text messages came from are provided by Onvoy, Twilio, and Commio, each of which allows callers to configure and send automated text messages en mass;

      vi.      the phone numbers spammed by Does 1-10 were randomly or sequentially stored or produced, not from information consensually provided to Does 1-10 by Joshua, but from bots, public data sources, or some other means.

31. The unwanted text messages invaded Joshua's substantive right to privacy, namely the right to be free from unsolicited telemarketing text messages.

32. These text messages have caused Joshua frustration, stress, anxiety, and worry about scammers. The text messages hinder Joshua from enforcing his rights to determine the purpose of the call, to make a do-not-call request, and to monitor compliance with the TCPA rules. The text messages cause Joshua to avoid looking at his phones when it may be important. The text messages reduce his phone's storage and battery life. In short, the text messages invade his privacy, dimmish the value of his phones and his enjoyment of life, and cause a nuisance, an annoyance, and an intrusion into his seclusion.

33. This injury to Joshua was done by Does 1-10 with the intent to cause harm or with the knowledge that the harm was substantially certain to result from their actions.

34. Injury from spam is well known. The *State of the Call 2021* report by *hiya*, which analyzed 150 billion calls, reveals: "We each received an average of 144 spam calls last year—58% of which were fraudulent. These calls are frustrating to all of us." https://f.hubspotusercontent30.net/hubfs/6751436/Marketing%20Content/WP-2102-State-of-the-Call-PDF.pdf (last accessed October 14, 2021). Does 1-10 would have not only believed, but would have known, that sending unsolicited text messages was substantially certain to cause the injury that the TCPA was meant to protect against, namely, an invasion of privacy, nuisance, annoyance, etc.

35. Does 1-10 intentionally sent the text messages in violation of the law, which was the cause of the invasion of privacy, nuisance, annoyance, etc. Does 1-10 did this simply for gain and profit, and without any just cause or excuse.

## LEGAL STANDARD

36. The TCPA provides that no person or entity shall make a call "using an automatic telephone dialing system or an artificial or prerecorded voice… [t]o any… cellular telephone" unless the call is "sent for emergency purposes or sent with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii); see also 47 C.F.R. § 64.1200(a)(1).

37. If the call "introduces an advertisement or constitutes telemarketing" then "prior express _written_ consent" is required. 47 C.F.R. § 64.1200(a)(2) (emphasis added).

38. Telemarketers may not "abandon more than three percent of all telemarketing calls." 47 C.F.R. § 64.1200(a)(7).

39. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the national Do Not Call Registry.

40. The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

41. The TCPA prohibits callers from telemarketing to a residential telephone subscriber without disclosing the name of the individual caller and the name of the person or entity on whose behalf the call is being sent. 47 C.F.R. § 64.1200(d).

42. Both phone calls and text messages are a "call" under the TCPA. *Satterfield v. Simon Schuster,* 569 F.3d 946, 954 (9th Cir. 2009).

43. Wireless subscribers may put their number on the DNCR. 47 C.F.R. § 64.1200(e).

44. The tort of invasion of the right to privacy prohibits the wrongful intrusion into people's private activities. Intrusion upon seclusion is based on people's right to be left alone. Someone who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of

another or his private affairs or concerns, is subject to liability to the other for invasion of their privacy if the intrusion would be highly offensive to a reasonable person.

45. The Supreme Court recently recognized again the invasion of privacy from these text messages. "In enacting the TCPA, Congress found that banning robocalls was 'the only effective means of protecting telephone consumers from this nuisance and privacy invasion.'… In plain English, the TCPA prohibited almost all robocalls to cell phones." *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2344, 207 L. Ed. 2d 784 (2020).

46. Generally, courts "will not entertain a suit unless the defendant has been made a party by service of process. Courts do grant an exception to this rule for 'John Doe' defendants, but only in situations where the otherwise unavailable identity of the defendant will eventually be made known through discovery." *Collingsworth v. Drummond Co.*, Civil Action No. 19-1263 (ABJ), 27-28 (D.D.C. May. 29, 2020) (citing *Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir. 2010)).

## FIRST CAUSE OF ACTION
### Violations of 47 C.F.R. § 64.1200(a)(1)-(2)

47. Does 1-10 used an ATDS, artificial voice, or prerecorded voice to contact Joshua in violation 47 C.F.R. 64.1200(a)(1)-(2).

48. As a result of Does 1-10's violations of 47 C.F.R. § 64.1200(a)(1)-(2), Joshua has been damaged and is entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

49. Because Does 1-10 knowingly and willfully violated 47 C.F.R. § 64.1200(a)(1)-(2), the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B)-(C).

50. Joshua also seeks to injunctive relief prohibiting Does 1-10 from using an ATDS, artificial voice, and prerecorded voice when sending telemarketing text messages without the prior express written consent of the called party.

## SECOND CAUSE OF ACTION
### Violations of 47 C.F.R. § 64.1200(a)(7)

51. Does 1-10 abandoned 100% of the text messages to Joshua in violation 47 C.F.R. 64.1200(a)(7).

52. As a result of Does 1-10's violations of 47 C.F.R. § 64.1200(a)(7), Joshua has been damaged and is entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

53. Because Does 1-10 knowingly and willfully violated 47 C.F.R. § 64.1200(a)(7), the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B)-(C).

54. Joshua also seeks to injunctive relief prohibiting Does 1-10 from abandoning more than 3% of telemarketing calls.

## THIRD CAUSE OF ACTION
### Violations of 47 C.F.R. § 64.1200(c)

55. Does 1-10 sent telephone solicitations to the residential cellular telephone of Joshua while he was registered on the National Do Not Call Registry in violation of 47 C.F.R. § 64.1200(c).

56. As a result of Does 1-10's violation of 47 C.F.R. § 64.1200(c), Joshua has been damaged and is entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

57. Because Does 1-10 knowingly and willfully violated 47 C.F.R. § 64.1200(c), the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

58. Joshua also seeks injunctive relief prohibiting Does 1-10 from sending telephone solicitations to phone numbers registered on the DNCR.

## FOURTH CAUSE OF ACTION
### Violations of 47 C.F.R. § 64.1200(d)

59. Does 1-10 sent telemarketing text messages to Joshua's residential cellular telephone without disclosing the identity of the individual sending the text messages and the identity of the entity on whose behalf the text messages were sent, in violation of 47 C.F.R. § 64.1200(d).

60. As a result of Does 1-10's violations of 47 C.F.R. § 64.1200(d), Joshua has been damaged and is entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

61. Because Does 1-10 knowingly and willfully violated 47 C.F.R. § 64.1200(d), the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

62. Joshua also seeks injunctive relief requiring Does 1-10 to disclose the actual name of the individual and the actual name of the entity on whose behalf any telemarketing text messages are sent.

## FIFTH CAUSE OF ACTION
### Invasion of Privacy- Intrusion Upon Seclusion
### Restatement of the Law, Second, Torts §652(b)

63. The volume of unsolicited telemarketing text messages to Joshua would be offensive to any reasonable person.

64. As a direct and proximate result, Joshua has suffered damages in an amount to be determined at trial.

## RELIEF REQUESTED

Joshua respectfully requests the Court grant the following relief against Does 1-10:

A. Joshua seeks an amount to be determined at trial that is not less than $2,323,500 as a result of at least 1,549 violations of 47 C.F.R. § 64.1200(a)(1)-(2).

B. Joshua seeks an amount to be determined at trial that is not less than $2,323,500 as a result of at least 1,549 violations of 47 C.F.R. § 64.1200(a)(7).

C. Joshua seeks an amount to be determined at trial that is not less than $2,323,500 as a result of at least 1,549 violations of 47 C.F.R. § 64.1200(c).

D. Joshua seeks an amount to be determined at trial that is not less than $2,323,500 as a result of at least 1,549 violations of 47 C.F.R. § 64.1200(d).

E. Joshua seeks an amount to be determined at trial as a result of at least 1,549 unsolicited telemarketing text messages that invaded Joshua's substantive right to privacy.

F. Joshua seeks a finding that the injuries caused by Does 1-10 were willful and malicious.

G. Joshua seeks costs pursuant to 28 U.S.C. § 1920.

H. Joshua seeks judgment interest pursuant to 28 U.S.C. § 1961.

I. Joshua seeks injunctive relief prohibiting such conduct in the future.

J. Joshua seeks any other relief the Court may deem just and proper.

## JURY DEMAND

Joshua requests a jury trial as to all claims of the complaint so triable.

DATED February 7, 2022.

Respectfully Submitted

/s/ *James Wertheim*
James Wertheim
Bar No. OH0055
**LawHQ, P.C.**
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090 Ext 30049
jim@lawhq.com

*Attorney for Plaintiff*