John Kauffman (SBN 302422)
john.kauffman@lawhq.com
LawHQ, PC
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| Joshua Champion, Asif Lundstrom, Todd Horne, Toni Kirk, Rosie Clarke, Benjamin Kelley, Peter Richardson, Teresa Alley, Scott Hall, Denise King, Tia West, Eric Peterson, Tammarrah Morris, Lynn Brown, and Nick Miller<br><br>Plaintiffs,<br><br>v.<br><br>Michael Boehm, and Hosting Response, LLC<br><br>Defendants. | Case No.: 2:22-cv-05840-FLA-KS<br><br>PLAINTIFFS' SECOND AMENDED COMPLAINT |

## PROCEDURAL BACKGROUND

This lawsuit was initially filed by Plaintiff Joshua Champion in the D.C. Federal District Court against unknown John Doe defendants for violations of the Telephone Consumer Protection Act ("TCPA"). Through discovery, Joshua Champion uncovered the spammers' identities. It was also discovered that Joshua

Champion's legal counsel had 14 other clients with telephone spam from the same spammers. Joshua Champion transferred the case to this court for jurisdictional reasons. Plaintiffs submit this Second Amended Complaint pursuant to Fed. R. Civ. P. Rule 15(a)(2), which allows Plaintiffs to amend their complaint with the opposing parties' written consent.

## INTRODUCTION

1. This lawsuit is brought by 15 Plaintiffs who have received at least 1,704 spam text messages from Defendant Michael Boehm ("Boehm").

2. Boehm is one of the highest volume spammers in the world.

3. For more than a decade, Boehm has spammed Americans with billions of messages.

4. According to SpamHaus—which has tracked email spam since 1998 and provides spam analysis for over 3.1 billion email inboxes—Boehm is the #2 worst email spammer in the United States, and #3 in the world. *See The 10 Worst Spammers*, https://spamhaus.org/statistics/spammers (last accessed August 18, 2022).

5. As with email, Boehm is one of the highest volume SMS spammers in the world.

6. This lawsuit involves 15 Plaintiffs who have each received SMS spam from Boehm. Additionally, Plaintiffs' legal counsel has over 60 other clients who have received another 400+ SMS spam that is *potentially* from Boehm. These 60+ other clients are not currently named Plaintiffs only because the senders of these other messages are still uncertain. However, the other 400+ SMS spam have ties to Boehm.

7. The difficulty in determining who sent the text messages stems from the fact that Boehm—and professional spammers like Boehm—use advanced techniques to hide their identity. They do this even though the Telephone Consumer Protection Act ("TCPA") requires telemarketers to say who they are.

8. Boehm goes to *substantial* lengths to obfuscate his activities so he cannot be tracked.

9. Boehm's techniques are so effective that the only way to identify Boehm was through subpoenas to 36 different parties, including phone companies, domain registrars, and affiliate networks. The subpoena responses clearly identified Boehm and Hosting Response as the sender of the SMS spam sent to the 15 Plaintiffs in this case.

10. Hosting Response is the entity through which Boehm operates. However, Boehm is the one personally running the operation and sending the spam.

11. Because the D.C. District does not have personal jurisdiction over Defendants for the claims of all 15 Plaintiffs, Joshua Champion transferred the case to this court.

12. The 15 Plaintiffs now bring this action to enjoin Defendants' abusive practices, and for damages.

13. "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ("TCPA"). But as every American knows, there are companies—like the defendant in this case—who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021).

## JURISDICTION AND VENUE

14. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA which is a federal statute.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the text messages giving rise to this lawsuit were initiated and sent by Boehm and Hosting Response in this district and from this district.

## PARTIES

16. Plaintiff Joshua Champion is a resident of Washington, D.C. He is the subscriber and user of the residential cell phone number 202-492-0336, which he registered on the Do Not Call Registry on June 11, 2019. He has received at least 1,473 spam text messages from Defendants.

17. Plaintiff Asif Lundstrom is a resident of Spokane, Washington. He is the subscriber and user of the residential cell phone number 209-585-5470, which he registered on the Do Not Call Registry on February 27, 2021. He has received at least 102 spam text messages from Defendants.

18. Plaintiff Todd Horne is a resident of Riverton, Utah. He is the subscriber and user of the residential cell phone number 801-634-1834, which he registered on the Do Not Call Registry on June 25, 2009. He has received at least 31 spam text messages from Defendants.

19. Plaintiff Toni Kirk is a resident of Everett, Washington. He is the subscriber and user of the residential cell phone number 425-344-6961, which he registered on the Do Not Call Registry on August 4, 2022. He has received at least 29 spam text messages from Defendants.

20. Plaintiff Rosie Clarke is a resident of Pensacola, Florida. She is the subscriber and user of the residential cell phone number 863-210-4277, which she registered on the Do Not Call Registry on July 4, 2022. She has received at least 15 spam text messages from Defendants.

21. Plaintiff Benjamin Kelley is a resident of Tyler, Texas. He is the subscriber and user of the residential cell phone number 903-423-9097, which he registered on the Do Not Call Registry on March 29, 2022. He has received at least 10 spam text messages from Defendants.

22. Plaintiff Peter Richardson is a resident of Port Saint Lucie, Florida. He is the subscriber and user of the residential cell phone number 248-620-9467, which he registered on the Do Not Call Registry on June 29, 2003. He has received at least 9 spam text messages from Defendants.

23. Plaintiff Teresa Alley is a resident of Shoreline, Washington. She is the subscriber and user of the residential cell phone number 425-970-2073, which she registered on the Do Not Call Registry on June 11, 2019. She has received at least 8 spam text messages from Defendants.

24. Plaintiff Scott Hall is a resident of Camp Verde, Arizona. He is the subscriber and user of the residential cell phone number 928-642-5816, which he registered on the Do Not Call Registry on April 15, 2022. He has received at least 8 spam text messages from Defendants.

25. Plaintiff Denise King is a resident of North Little Rock, Arkansas. She is the subscriber and user of the residential cell phone number 501-708-5317, which she registered on the Do Not Call Registry on November 16, 2019. She has received at least 6 spam text messages from Defendants.

26. Plaintiff Tia West is a resident of Clinton, Missouri. She is the subscriber and user of the residential cell phone number 586-329-8446, which she registered on the Do Not Call Registry on December 12, 2004. She has received at least 5 spam text messages from Defendants.

27. Plaintiff Eric Peterson is a resident of New Orleans, Louisiana. He is the subscriber and user of the residential cell phone number 815-451-0544, which he registered on the Do Not Call Registry on March 28, 2022. He has received at least 4 spam text messages from Defendants.

28. Plaintiff Tammarrah Morris is a resident of Gary, Indiana. She is the subscriber and user of the residential cell phone number 219-427-3185, which she registered on the Do Not Call Registry on March 18, 2018. She has received at least 2 spam text messages from Defendants.

29. Plaintiff Lynn Brown is a resident of Lake Worth, Florida. She is the subscriber and user of the residential cell phone number 970-379-7470, which she registered on the Do Not Call Registry on July 23, 2022. She has received at least 2 spam text messages from Defendants.

30. Plaintiff Nick Miller is a resident of Meridian, Idaho. He is the subscriber and user of the residential cell phone number 208-284-6503, which he registered on the Do Not Call Registry on March 7, 2019. He has received at least 2 spam text messages from Defendants.

31. Defendant Michael Boehm is a resident of Calabasas, California.

32. Defendant Hosting Response, LLC is a Wyoming limited liability company, with its principal place of business in Los Angeles County, California.

Hosting Response has a California branch and owns property in California. Hosting Response is owned, controlled, and run by Defendant Boehm.

## FACTUAL ALLEGATIONS

33. Like most Americans, Plaintiffs have a mobile residential telephone.

34. Being mobile, Plaintiffs use their phones everywhere they go, including in their homes.

35. Plaintiffs use their phone to receive and make important calls, to get emergency information, and to receive text messages from family and friends.

36. Plaintiffs' privacy, phone, and home have been invaded by the non-emergency telemarketing text messages from Defendants.

37. None of the Plaintiffs ever provided their phone number to Defendants, never had a relationship with Defendants, and never gave permission to Defendants to contact them in any way.

38. Nevertheless, Defendants knowingly and willfully texted Plaintiffs at least 1,704 times. *See Exhibit A: List of Text Messages*.

39. The exact number of text messages is likely substantially higher than 1,704 given the prolific nature of Defendants' spam and the difficulty in identifying the sender of the text messages.

40. Of the 1,704 text messages Plaintiffs received, Plaintiffs received a total of at least 1,660 text messages that were sent by Defendants while Plaintiffs were on the Do Not Call Registry ("DNCR"). Each Plaintiff who received text messages from Defendants while on the DNCR received more than one text message within a 12-month period. *Id.*

41. Here is one example of a text message that Defendants sent to Joshua Champion on October 13, 2021: "Sam's C|ub is giving you a courtesy, 12 month membership + $300. Must be activated by, tomorrow http://clubhoct.com/dvd/c-TZzd_."

42. Often the text messages stated the sender was from CVS, Sam's Club, or other brand names. However, these assertions about the sender of the messages were lies to trick the recipients to click on the links in the messages.

43. The text messages advertised the commercial availability of car insurance, debt relief service, watches, electronic devices, and more. The text messages also encouraged the purchase of these services and products.

44. The URL hyperlinks in the text messages went to pages that promoted insurance products, loans, and other similar consumer goods and services.

45. None of the text messages to any of the Plaintiffs disclosed the name of the individual or the name of the entity on whose behalf the text messages were sent.

46. Not only did Defendants fail to disclose their identity to Plaintiffs, but they also went to great lengths to hide their identity.

47. Each time a new text message was sent, the URLs contained in the text messages initially redirected to a sales website. However, after a few days, the URLs redirected to generic websites such as www.google.com, or to no website at all. Defendants purposefully did this to hide their identity and to prevent getting caught.

48. Defendants also prevented Plaintiffs from blocking Defendants' spam. Each time Defendants sent a new text message, the text message came from a

different phone number. This is obviously not something a telemarketer does when the recipients have consented to receive marketing.

49. In June of 2021, Plaintiff Joshua Champion replied to ten different text messages from Defendants in which Joshua asked, "Who is this?" Nobody ever responded to any of the text messages, indicating Defendants abandon 100% of every text message.

50. The text messages were sent using an Automatic Telephone Dialing System ("ATDS"). This is based on the following facts:

   i. there are 15 Plaintiffs who have all reported spam that was sent by Defendants;
   ii. none of these 15 Plaintiffs ever provided their number to Defendants, indicating their phone numbers were randomly or sequentially generated and produced;
   iii. when a recipient responded to the text message, nobody replied;
   iv. each text messages came from different phone numbers; and
   v. the telephone numbers that the text messages came from are provided by Onvoy, Twilio, and Commio, each of which allows callers to configure and send automated text messages *en masse*.

51. Subpoena responses specifically identified Boehm and Hosting Response as the sender of the text messages.

52. The unwanted text messages invaded Plaintiffs' substantive right to privacy, namely the right to be free from unsolicited telemarketing text messages.

9

53. These text messages have caused Plaintiffs frustration, stress, anxiety, and worry about scammers. The text messages hinder Plaintiffs from enforcing their rights to determine the purpose of the call, to make a do-not-call request, and to monitor compliance with the TCPA rules. The text messages cause Plaintiffs to avoid looking at their phones when it may be important. The text messages reduce the storage and battery life on Plaintiffs' phones. In short, the text messages invade Plaintiffs' privacy, diminish the value of Plaintiffs' phones and Plaintiffs' enjoyment of life, and cause a nuisance, an annoyance, and an intrusion into their seclusion.

54. This injury to Plaintiffs was done by Defendants with the knowledge that the harm was substantially certain to result from their actions.

55. Injury from spam is well known. The *State of the Call 2021* report by *hiya*, which analyzed 150 billion calls, reveals: "We each received an average of 144 spam calls last year—58% of which were fraudulent. These calls are frustrating to all of us." (last accessed August 22, 2022). Defendants would have not only believed, but would have known, that sending unsolicited text messages was substantially certain to cause the injury that the TCPA was meant to protect against, namely, an invasion of privacy, a nuisance, an annoyance, and more.

56. Defendants intentionally sent the text messages in violation of the law, which was the cause of the invasion of privacy, nuisance, and annoyance. Defendants did this simply for gain and profit, and without any just cause or excuse.

## LEGAL STANDARD

57. **Automated Calls**. The TCPA provides that no person or entity shall make a call "using an automatic telephone dialing system or an artificial or prerecorded voice… [t]o any… cellular telephone" unless the call is "sent for emergency purposes or sent with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii); see also 47 C.F.R. § 64.1200(a)(1).

58. If the call "introduces an advertisement or constitutes telemarketing" then "prior express _written_ consent" is required. 47 C.F.R. § 64.1200(a)(2) (emphasis added).

59. **Do Not Call Claim.** Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the national Do Not Call Registry.

60. The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

61. Wireless subscribers may put their number on the DNCR. 47 C.F.R. § 64.1200(e).

62. **Failure to Disclose Identity**. The TCPA prohibits callers from telemarketing to a residential telephone subscriber without disclosing the name of the individual caller and the name of the person or entity on whose behalf the call is being sent. 47 C.F.R. § 64.1200(d)(4).

63. **Texts are Calls**. Both phone calls and text messages are a "call" under the TCPA. *Satterfield v. Simon Schuster,* 569 F.3d 946, 954 (9th Cir. 2009).

64. **Personal Liability**. An individual is personally liable for TCPA violations when personally involved in making or authorizing the calls. 47 U.S.C. § 217; *Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 WL 5966340, at *4 (E.D. Mich. Nov. 8, 2013).

65. **Invasion of Privacy**. The tort of invasion of the right to privacy prohibits the wrongful intrusion into people's private activities. Intrusion upon seclusion is based on people's right to be left alone. Someone who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of their privacy if the intrusion would be highly offensive to a reasonable person. *Miller v. National Broadcasting Co.* (1986) 187 CA3d 1463, 232 CR 668.

66. The Supreme Court recently recognized again the invasion of privacy from these text messages. "In enacting the TCPA, Congress found that banning robocalls was 'the only effective means of protecting telephone consumers from this nuisance and privacy invasion.'… In plain English, the TCPA prohibited almost all robocalls to cell phones." *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2344, 207 L. Ed. 2d 784 (2020).

67. **Punitive Damages**. Punitive damages are available where a party acts with malice. Cal. Civ. Code § 3294(a). Malice means "despicable conduct" involving "a willful and conscious disregard of the rights" of others. Cal. Civ. Code § 3294(c)(1). Treble damages under the TCPA have been deemed not to be punitive in nature, allowing plaintiffs to obtain additional sums for punitive damages. *Roylance v. Carney*, 2014 WL 1652440 at 5 (N.D. Cal. Apr. 23, 2014).

Punitive damages ratios tend to range between 1 to 1 and 16 to 1. See *Bankhead v. ArvinMeritor, Inc.* 205 Cal.App.4th 68, 88 (Cal. Ct. App. 2012)

## FIRST CAUSE OF ACTION

### Violations of 47 C.F.R. § 64.1200(a)(1)-(2) – Automated Calls

68. Defendants used an ATDS to contact Plaintiffs in violation 47 C.F.R. 64.1200(a)(1)-(2).

69. As a result of Defendants' violations of 47 C.F.R. § 64.1200(a)(1)-(2), Plaintiffs have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

70. Because Defendants knowingly and willfully violated 47 C.F.R. § 64.1200(a)(1)-(2), the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B)-(C).

71. Plaintiffs also seek injunctive relief prohibiting Defendants from using an ATDS without prior express consent.

## SECOND CAUSE OF ACTION

### Violations of 47 C.F.R. § 64.1200(c)(2) – Do Not Call Registry

72. Defendants made telephone solicitations to the residential cellular telephones of Plaintiffs while Plaintiffs' numbers were registered on the National Do Not Call Registry, in violation of 47 C.F.R. § 64.1200(c)(2).

73. As a result of Defendants' violations of 47 C.F.R. § 64.1200(c)(2), Plaintiffs have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

74. Because Defendants knowingly and willfully violated 47 C.F.R. § 64.1200(c)(2), the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

75. Plaintiffs also seek injunctive relief prohibiting Defendants from making telephone solicitations to phone numbers registered on the DNCR.

## THIRD CAUSE OF ACTION

### Violations of 47 C.F.R. § 64.1200(d)(4) – Failure to Identify

76. Defendants sent telemarketing text messages to Plaintiffs' residential cellular telephones without disclosing the identity of the individual sending the text messages and the identity of the entity on whose behalf the text messages were sent, in violation of 47 C.F.R. § 64.1200(d)(4).

77. As a result of Defendants' violations of 47 C.F.R. § 64.1200(d)(4), Plaintiffs have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

78. Because Defendants knowingly and willfully violated 47 C.F.R. § 64.1200(d)(4), the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

79. Plaintiffs also seek injunctive relief requiring Defendants to disclose the actual name of the individual and the actual name of the entity on whose behalf any telemarketing text messages are sent.

## FOURTH CAUSE OF ACTION

### Invasion of Privacy & Intrusion Upon Seclusion

80. The volume of unsolicited telemarketing text messages to Plaintiffs would be offensive to any reasonable person.

14

81. As a direct and proximate result, Plaintiffs have suffered damages in an amount to be determined at trial including punitive damages.

**RELIEF REQUESTED**

Plaintiffs respectfully requests the Court grant the following relief against Defendants:

A. Plaintiffs seek an amount to be determined at trial that is not less than $2,556,000 as a result of at least 1,704 violations of 47 C.F.R. § 64.1200(a)(1)-(2).

B. Plaintiffs seek an amount to be determined at trial that is not less than $2,490,000 as a result of at least 1,660 violations of 47 C.F.R. § 64.1200(c)(2).

C. Plaintiffs seek an amount to be determined at trial that is not less than $2,556,000 as a result of at least 1,704 violations of 47 C.F.R. § 64.1200(d)(4).

D. Plaintiffs seek an amount to be determined at trial as a result of at least 1,704 unsolicited telemarketing text messages that invaded Plaintiffs' substantive right to privacy.

E. Plaintiffs seek a finding that the injuries caused by Defendants were willful and malicious.

F. Plaintiffs seek 1x to 10x exemplary damages in an amount to be determined at trial.

G. Plaintiffs seek costs pursuant to 28 U.S.C. § 1920.

H. Plaintiffs seek judgment interest pursuant to 28 U.S.C. § 1961.

I. Plaintiffs seek injunctive relief prohibiting such conduct in the future.

15

J. Plaintiffs seek any other relief the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs request a jury trial as to all claims of the complaint so triable.

Dated: November 11, 2022

                                    Respectfully Submitted,

                                    /s/ *John Kauffman*
                                    John Kauffman