John Kauffman (SBN 302422)
john.kauffman@lawhq.com
LawHQ, PC
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

Joshua Champion, Asif Lundstrom,
Todd Horne, Toni Kirk, Rosie Clarke,
Benjamin Kelley, Peter Richardson,
Teresa Alley, Scott Hall, Denise King,
Tia West, Eric Peterson, Tammarrah
Morris, Lynn Brown, and Nick Miller

          Plaintiffs,

      v.

Michael Boehm, and
Hosting Response, LLC

          Defendants.

Case No.: 2:22-cv-05840-FLA-KS

PLAINTIFFS' MEMORANDUM OF
POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................1

II.     FACTUAL ALLEGATIONS ........................................................................3

III.    ARGUMENT................................................................................................5

     A.   Plaintiffs' Second Amended Complaint is Not a Shotgun
          Pleading and Makes Clear Allegations that are Sufficient for
          Defendants to Know What Claims are Alleged ...................................5

     B.   The Complaint Adequately Pleads Michael Boehm's
          Participation.......................................................................................7

     C.   Plaintiffs have Plausibly Pled the Use of an ATDS............................9

           1.   Plaintiffs do not Need to Plead Technical Details of the
                Specific ATDS Used...............................................................9

           2.   Plaintiffs are Entitled to Discovery on the Details .................10

           3.   Facts Alleged in the Complaint and Apparent in the
                Exhibit Show a Non-Conclusory Basis for the
                Allegations that an ATDS was Used ........................................11

     D.   Review of the Text Messages Shows Highly Offensive Conduct
          Sufficient to Support Invasion of Privacy/Intrusion Upon
          Seclusion Claims ..............................................................................14

     E.   The TCPA Authorizes Plaintiffs to Recover Damages for Both
          the Do Not Call Registry Violations and Failure to Identify
          Violations ........................................................................................18

     F.   Dismissal with Prejudice is Unwarranted .........................................23

IV.     CONCLUSION...........................................................................................24

i

# TABLE OF AUTHORITIES

**Cases**

*Allison v. Wells Fargo Bank, N.A.*, 2022 WL 16955661 (S.D. Cal. Oct 18, 2022) ........................................................................................ 10, 14

*Anthony v. Pro Custom Solar, LLC*, 2022 WL 1634870 (C.D. Ca. Jan. 21, 2022).14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................8

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 207 L. Ed. 2d 784, 140 S. Ct. 2335 (2020) ...................................................................................1

*Borden v. eFinancial, LLC*, 2022 WL 16955661 (9th Cir. Nov. 16, 2022) ...........14

*Brown v. Stored Value Cards, Inc.*, 953 F.3d 567 (9th Cir. 2020) ........................23

*Burgess v. Portfolio Recovery Assocs.*, 2017 WL 2471802 (C.D. Ca. 2017) .........16

*Burtt v. Sunnova Energy Corp.*, 2022 WL 3574411 (C.D. Cal. July 29, 2022)......23

*Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622 (W.D. Tex. May 10, 2021)....................................................................10

*Carl v. First Nat'l Bank of Omaha*, No. 2:19-CV-00504-GZS, 2021 WL 2444162 (D. Me. June 15, 2021) ..............................................................10

*Champion v. Credit Pros International Corporation*, 2022 WL 3152657 (D. N.J. August 5, 2022) ...........................................................7, 8

*Charvat v. GVN Michigan, Inc.,* 561 F.3d 623 (C.A.6 (Ohio), 2009)....................20

*Charvat v. NMP, LLC*, 656 F.3d 440 (C.A.6 (Ohio), 2011)...................................20

*City Select Auto Sales, Inc v. David Randall Associates, Inc.*, 885 F.3d 154, 162 (3rd Cir. 2018)...........................................................................7

*Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021) ...........................1

*David v. Williams*, 588 F.2d 69 (4th Cir. 1978) ........................................23

*Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) ....................................6

*Eason v. Roman Catholic Bishop of San Diego*, 414 F.Supp.3d 1276 (S.D. Ca. 2019) .................................................................................22

*Eggleston v. Reward Zone USA, LLC*, 2022 WL 886094 (C.D. Cal. Jan. 28, 2022) ........................................................................................................................14

*Eminence Capital, LLC v. Aspeon*, 316 F.3f 1048 (9th Cir. 2003) ................. 23, 24

*Engle v. Unified Life Ins. Co., Inc.*, 2014 WL 12508347 (S.D. Cal. Oct. 27, 2014) ........................................................................................................................22

*Facebook, Inc. v. Duguid*, 209 L. Ed. 2d 272, 141 S. Ct. 1163 (2021) ..................10

*Foman v. Davis*, 371 U.S. 178 (1962) ....................................................................23

*Garner v. Allstate Insurance Company*, 2021 WL 3857786 (N.D. Ill. Aug 30, 2021) ........................................................................................................................13

*Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646 (9th Cir. 1984) ....................................................................................................5

*Karagiannis v. Allcare Dental Management, LLC*, 2010 WL 3724767 (N.D. Ill. 2010) ..........................................................................................................................8

*Lary v. Trinity Physician Financial & Ins. Services*, 780 F.3d 1101 (C.A.11 (Ala.), 2015) (cleaned up) ........................................................................................20

*Margarita Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575 (N.D. Ca. 1999) ........................................................................................................................22

*Maryland v. Universal Elections*, 787 F. Supp. 2d 408 (D. Md. 2011) ...................7

*Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036 (9th Cir. 2012) ..........14

*Miles v. Medicredit, Inc.*, No. 4:20-CV-01186 JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021) ................................................................................................10

*Miller v. National Broadcasting Co.* (1986) 187 Cal.App.3d 1463 .......................14

*Mogadam v. Fast Eviction Service*, 2015 WL 1534450 (C.D. Cal. March 30, 2015) ................................................................................................................ 10, 11

*Niemczyk v. Pro Custom Solar LLC*, No. CV197846ESMAH, 2022 WL 884359 (D.N.J. Mar. 25, 2022) ............................................................................................10

*Olympic Coast Inv. Inc. v. Seipel*, 2006 WL 3431874  (9th Cir. 2006) .................22

*Ryan v. Foster & Marshall, Inc.*, 556 F.2d 460 (9th Cir.1977)..............................22

*Schley v. One Planet Ops, Inc.*, 445 F.Supp.3d 454 (N.D. Cal. March 18, 2020) .11, 13

*Tamraz v. Bakotic Pathology Assocs., LLC*, 2022 WL 16985001 (S.D. Cal. Nov. 16, 2022) ................................................................................5

*Texas v. Am. Blastfax*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)................................7

*Tillotson v. Valley Paving, Inc.*, 2008 WL 11387037 (E.D. Ca. 2008)..................22

*Todd v. Citibank*, No. 16-5204, 2017 WL 1502796 (D.N.J. Apr. 26, 2017)............9

*Vang v. Hudson*, 2009 WL 3247003 (E.D. Ca. 2009) ...............................................8

*Varnado v. Midland Funding, LLC*, 43 F.Supp.3d 985 (N.D. Cal. 2014)..............16

*Weisbein v. Allergan, Inc.*, 2021 WL 1034979 (C.D. Ca. 2021)...............................7

*Wilson v. Rater8, LLC*, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)....................12

**Statutes**

47 C.F.R. § 64.1200(c)............................................................................................18

47 C.F.R. § 64.1200(d) ...........................................................................................18

47 U.S.C. § 227(b) ..................................................................................................18

47 U.S.C. § 227(c) ..................................................................................................18

47 U.S.C. § 227(c)(5)...............................................................................................19

47 U.S.C. § 227(g)(1)...............................................................................................21

Federal Rule of Civil Procedure 9 ............................................................................6

**Other**

Restatement Second of Torts, section 652B ............................................................14

*Why Scammers Make Spelling and Grammar "Mistakes,"* https://josephsteinberg.com/why-scammers-make-spelling-and-grammar-mistakes  / (last accessed 10-17-22)........................................................................12

1

## I.     INTRODUCTION

Plaintiffs received over 1,700 spam text messages from Defendants, who are among the worst spammers in the United States. These messages are a nuisance and an invasion of Plaintiffs' privacy. "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 207 L. Ed. 2d 784, 140 S. Ct. 2335, 2343 (2020). "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ("TCPA"). But as every American knows, there are companies—like the defendant in this case—who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021).

The TCPA prohibits the use of autodialers to blast out telemarketing text messages, prohibits telemarketing texts to numbers registered on the national Do Not Call Registry ("DNCR"), and requires those sending text messages to identify themselves. These texts invade people's privacy. Defendants violated each of these provisions. Plaintiffs received autodialed spam texts from Defendants and are among the many Americans who have sought to prevent this spam by registering their telephone numbers on the DNCR. However, as has happened to many Americans, simply registering on the DNCR has not been sufficient to stop Defendants from contacting them. Plaintiffs to this day are still receiving unwanted telemarketing calls and texts from Defendants. And what makes matters worse, Defendants tried to hide their identity because Defendants are aware that their actions are prohibited by the TCPA. But Plaintiffs tracked them down.

Plaintiffs' Second Amended Complaint[1] ("SAC") asserts four causes of action: 1) Violation of 47 C.F.R. § 64.1200(a) by using an Automatic Telephone Dialing System ("ATDS") without consent of the recipients; 2) Violation of 47 C.F.R. § 64.1200(c) for making telephone solicitations to persons whose numbers are registered on the DNCR; 3) Violation of 47 C.F.R. § 64.1200(d)(4) for failing to properly identify themselves in the text messages; and 4) for the tort of intrusion upon seclusion. Plaintiffs seek both monetary damages and injunctive relief.

Defendants filed a Motion to Dismiss. Defendants first argue that the SAC impermissibly lumps the fifteen Plaintiffs and the two Defendants together. This is simply wrong. The actions of Defendants, acting together, affected each Plaintiff in the same way. Thus, the pleading is not a shotgun pleading as each Plaintiff has clearly plead what each Defendant did.

Defendants next argue that Plaintiffs have not sufficiently plead that Defendant Boehm had direct, personal participation in or personally authorized the sending of the text messages. This is also wrong. Plaintiffs have clearly plead that Defendant Boehm controls Defendant Hosting Response and that the messages were sent by Defendant Boehm. This is more than sufficient to satisfy the pleading requirements.

Defendants next argue that Plaintiffs' First Cause of Action for sending text messages using an ATDS should be dismissed because the SAC fails to plausibly

---

[1] The Complaint was amended once to name the Defendants after the John Doe parties were identified through discovery. The second amendment was by agreement of the parties to narrow the causes of action.

allege that the equipment Defendants used meets the definition of an ATDS. But Plaintiffs have set forth many facts that make it plausible that an ATDS was used. Many courts have noted that a plaintiff cannot possibly know what system the defendants use before discovery.

Defendants then argues that Plaintiffs' Fifth Cause of Action for invasion of privacy/intrusion upon seclusion fails because Plaintiffs' allegations of receipt of text messages are insufficient to demonstrate conduct that "would be highly offensive to an ordinarily reasonable person" as a matter of law. This is not consistent with case law. Plaintiff Josh Champion received over 1,600 texts from Defendants.

Finally, Defendants argue that the SAC should be dismissed to the extent it seeks more than one award of damages under 47 U.S.C. § 227(c)(5) in relation to any single text. But the reasoning of the case law Defendants cite is not consistent with the history and purpose of the statute and regulations.

The Motion to Dismiss should be denied. Even if the Motion is granted in whole or in part, because the motion only seeks to fully dismiss the First and Fourth Causes of Action, some claims must continue.

## II.    FACTUAL ALLEGATIONS

Plaintiffs are fifteen individuals, most of whose phone numbers have been registered on the DNCR for many years. (Doc. 34, ¶¶ 16-30.) Plaintiffs do not know Defendants, have no relationship to Defendants, and have not provided their phone numbers to Defendants. (Doc. 34, ¶ 37.) Collectively, these Plaintiffs have received over 1,700 unwanted unsolicited, and often offensive and misleading telemarketing text messages from Defendants Michael Boehm and Hosting

Response, LLC. (Doc. 34, ¶¶ 6 & 40.) The details of 1,708 messages to Plaintiffs are set forth in the Exhibit to the SAC. (Doc. 34-1.)

Many of the messages were repetitive where the same or similar messages were sent multiple times, indicative of the use of an ATDS. See Doc. 34-1, 1657-1675 and 1677. See also Doc. 34-1, entries 1010, 1011, 1161 & 1162.) Similar messages were sent to multiple people who did not provide their telephone numbers to Defendants. (Doc. 34, ¶ 50.)

Plaintiffs were not initially able to identify the source of the text messages because Michael Boehm and Hosting Response, LLC go to extreme measures to hide their identity from the recipients of the messages. (Doc. 34 ¶¶ 7, 46-47.) The messages failed to properly identify the sender of the messages, sometimes even falsely invoking the names of well-known brands, which became apparent only through clicking the links in the messages and finding that they did not lead to those brands sites, but rather to other commercial websites. (Doc. 34, ¶¶ 42-47.) However, those links then often disappeared within days of the message being sent, further hindering efforts to identify the sender of the messages. (Doc. 34, ¶ 47.) Most of the messages come from different telephone numbers, again making identification more difficult. (Doc.34, ¶ 48.) Further, direct inquiries by responding to messages did not receive responses. (Doc.34, ¶ 49.)

Accordingly, this action was originally filed as a John Doe matter and required a significant amount of discovery in order to identify Defendants as the responsible parties. Plaintiffs subpoenaed telephone companies, domain registrars, and affiliate networks to find out who owned, used or controlled the tools used by the senders to try to monetize the text messages. (Doc. 34, ¶ 9.) The responses to

those subpoenas showed that Michael Boehm and Hosting Response, LLC, the company owned by Michael Boehm, were behind the messages. (Doc. 34, ¶ 51.) Michael Boehm is one of the highest volume spammers in the world. (Doc. 34, ¶¶ 2-5.) As shown by the subpoena responses, he is personally involved in the spam sent to Plaintiffs. (Doc. 34, ¶¶ 10 & 51.) Once Defendants were identified, Plaintiffs determined that the case should be transferred to California where Defendants are located. (Doc. 34, ¶ 11.)

## III.   ARGUMENT

### A.   **Plaintiff**s' **Second Amended Complaint** is **Not** a **Shotgun Pleading and Makes Clear Allegations that are Sufficient for Defendants to Know What Claims are Alleged**

Federal notice pleading rules require a short and plain statement of the claim demonstrating that the pleader is entitled to relief, giving fair notice in a succinct manner. *Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984). To comply with Rule 8(a)(2), a plaintiff suing multiple defendants must allege the basis of his claims against each defendant. *Tamraz v. Bakotic Pathology Assocs., LLC*, 2022 WL 16985001, at *2 (S.D. Cal. Nov. 16, 2022) Put differently, a pleading that names multiple defendants must establish the specific personal involvement of each defendant in the alleged wrongful acts. *Id.* Plaintiffs' SAC does precisely that.

First, Plaintiffs asserts that Defendants sent each message. The SAC makes clear that Defendant Boehm is alleged to be directly responsible ("personally running the operation and sending the spam") though he often does so through Hosting Response, LLC, the corporation that he owns and controls. (Doc. 34, ¶¶ 10, 32.)

Second, the SAC then lays out details about each text message. The SAC identifies the phone numbers of each Plaintiff, the date that each Plaintiff registered his/her phone number on the DNCR and sets forth in an exhibit the details of each text message that Plaintiffs received. (Doc. 34, ¶¶16-30 & 38.) The exhibit provides the exact content of each message and provides details about when the message was sent, which Plaintiff received the messages and the number that showed on the recipient's caller ID. (Doc. 34-1.)

Third, the SAC explains why an ATDS was used and describes how Defendants used different telephone numbers to contact Plaintiffs to avoid or hinder Plaintiffs' ability to block future messages. (Doc. 34, ¶ 48.)

Fourth, the SAC provides a summary of methods that Defendants undertake to hide their identity. (Doc. 34, ¶¶ 42-47.)

This is anything but a shotgun pleading. It is a clear, detailed statement of the claims against Defendants. Defendants' Motion to Dismiss makes the specious argument that they cannot tell what they are accused of doing. As shown above, such argument is without merit. Defendants can easily determine what is being alleged and respond to the SAC.

The caselaw cited by Defendants on shotgun pleadings is not on point. The cited cases mostly deal with fraud allegations, which are governed by their own rule requiring additional specificity. See Federal Rule of Civil Procedure 9. Additionally, the cases cited are cases with multiple defendants where the actions of each defendant are not set forth. See *Destfino v. Reiswig*, 630 F.3d 952, 954 (9th Cir. 2011) ("Plaintiffs sued twenty-nine individuals, ten businesses and a church"). Defendants here are a single corporate entity and the owner of that entity who is

alleged to fully control and participate in the actions at issue in the litigation. (Doc. 34, ¶¶ 31-32.) Defendants cannot truly have difficulty determining what is being alleged.

**B.      The Complaint Adequately Pleads Michael Boehm's Participation**

The TCPA itself provides for individual liability of individuals who assist corporations in violating the TCPA.[2] "[C]ourts that have addressed the issue have concluded that individuals acting on behalf of a corporation may be held personally liable for violations of [the TCPA] if they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 416 (D. Md. 2011) (quoting *Texas v. Am. Blastfax*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001)); see also *Weisbein v. Allergan, Inc.*, 2021 WL 1034979 at 5 (C.D. Ca. 2021), citing *City Select Auto Sales, Inc v. David Randall Associates, Inc.*, 885 F.3d 154, 162 (3rd Cir. 2018) ( "[A] corporate officer can be personally liable if he actually committed the conduct that violated the TCPA, and/or [he] actively oversaw and directed this conduct."). Plaintiffs' SAC alleges that Michael Boehm committed conduct that violated the TCPA. The SAC says "Hosting Response is the entity **through which Boehm operates**. However, Boehm **is the one personally running** the operation and **sending** the spam." (Doc. 34, ¶ 10 (emphasis added).) In *Champion v. Credit Pros International Corporation*, 2022 WL 3152657 at 4 (D. N.J. August 5, 2022), the court denied a motion to dismiss the corporate president where the allegations were that the president of a company

---

[2] This is not an issue of piercing the corporate veil or if an officer of a corporation is liable for the acts of the corporation. Personal liability is statutorily provided.

7

personally ran, authorized, and oversaw the telephone marketing of the company. The court held that such allegations demonstrated more than tangential involvement and permitted a cause of action against the individual. *Id.* 2022 WL 3152657 at 4 (D. N.J. August 5, 2022). Michael Boehm is exactly the type of individual that is personally liable under the TCPA. Michael Boehm was added to the suit based on his actions, not simply his status as an officer of Hosting Response. The SAC states that, through subpoenas, *both* Michael Boehm and Hosting Response were identified as senders of the messages. (Doc. 34, ¶ 51.) The SAC states that both Defendants have taken actions that initiated the sending of the messages.

A claim meets the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he plausibility standard is not akin to a probability requirement." *Karagiannis v. Allcare Dental Management, LLC*, 2010 WL 3724767 at 2 (N.D. Ill. 2010), citing *Iqbal*, 556 U.S. at 678. "A court will ask itself whether the plaintiff's allegations could have happened, not whether they did happen." *Id.* "Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* In order to exceed the formulaic recitation of elements, a complaint needs to contain "factual allegations sufficient to 'raise a right to relief above the speculative level.'" *Vang v. Hudson*, 2009 WL 3247003 at 1 (E.D. Ca. 2009).

In the present case, Plaintiffs are not speculating. Plaintiffs allege that Michael Boehm is one of the highest volume text spammers in the world. (Doc. 34,

¶ 5). The SAC describes how the messages were sent in a manner designed to hide the identity of the sender, through use of many different phone numbers and disappearing links to cover the senders' tracks. (Doc. 34, ¶¶ 45-48.) The SAC also describes how Plaintiffs subpoenaed telephone companies, domain registrars, and affiliate networks to find out who owned, used, or controlled the tools used by the senders to try to monetize the text messages. (Doc. 34, ¶ 9.) The SAC clearly states that the subpoena responses indicated that both Michael Boehm and Hosting Response, LLC were identified. (Doc. 34, ¶¶ 9, 51.) Based on these identifications, the SAC plausibly alleges that Michael Boehm directly participated in the violations of the TCPA whether it was on his own behalf or him acting through his control of Hosting Response, LLC.

### C.   Plaintiffs have Plausibly Pled the Use of an ATDS

Plaintiffs' SAC does more than simply recite the ATDS language of the TCPA. The SAC provides specific facts that demonstrate the likelihood an ATDS was used. (Doc. 34, ¶ 50.) Additional facts are presented in the exhibit to the SAC that quotes the messages that Plaintiffs had received as of the time the SAC was prepared. (Doc. 34-1.) As discussed below, those messages have many indicia of randomly and sequentially automated messages.

### 1.   Plaintiffs do not Need to Plead Technical Details of the Specific ATDS Used

A plaintiff must provide "at least some detail regarding the content of the messages or calls, thereby rendering the claim that an ATDS was used more plausible." *Todd v. Citibank*, No. 16-5204, 2017 WL 1502796, at *6 (D.N.J. Apr. 26, 2017). Where non-conclusory allegations show that it is plausible that an

9

ATDS was used, dismissal is not appropriate. *Allison v. Wells Fargo Bank, N.A.*, 2022 WL 16955661 (S.D. Cal. Oct 18, 2022). However, since *Facebook, Inc. v. Duguid*, 209 L. Ed. 2d 272, 141 S. Ct. 1163, 1164 (2021), district courts around the country have permitted claims under the TCPA to proceed without requiring plaintiffs to plead the technical specifications of defendants' automatic dialing systems. *See, e.g.*, *Miles v. Medicredit, Inc.*, No. 4:20-CV-01186 JAR, 2021 WL 2949565, at *4 (E.D. Mo. July 14, 2021); *Carl v. First Nat'l Bank of Omaha*, No. 2:19-CV-00504-GZS, 2021 WL 2444162, at *9 (D. Me. June 15, 2021); *Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *5 (W.D. Tex. May 10, 2021).

### 2.   Plaintiffs are Entitled to Discovery on the Details

Courts have held that the inquiry as to whether an ATDS was used is more appropriate at the summary judgment stage as defendants will have all of the information about the system used. See *Niemczyk v. Pro Custom Solar LLC*, 2022 WL 884359, at *3 (D.N.J. Mar. 25, 2022). ("Plaintiff is correct that Defendants may seek to prove that its dialing technology does not use random or sequential number generators at trial; however, that is a factual issue to be explored in discovery, rather than an issue to be decided as a matter of law at this stage"). "[W]hether a defendant used an ATDS is often a fact exclusively within the defendant's possession, the Court cannot expect that the plaintiff will be able to plead the existence of the system with specificity before an opportunity for discovery." *Mogadam v. Fast Eviction Service*, 2015 WL 1534450 at 2 (C.D. Cal. March 30, 2015).

### 3.   Facts Alleged in the Complaint and Apparent in the Exhibit Show a Non-Conclusory Basis for the Allegations that an ATDS was Used

In this case, the plausible use of random or sequential dialing is precisely what Plaintiffs allege. Plaintiffs' SAC explicitly states that Plaintiffs do not have any relationship to Defendants and did not provide their telephone numbers to Defendants. (Doc. 34, ¶ 37.) That fact is indicative of an automated system that generates telephone numbers randomly or sequentially. Plaintiffs' SAC identifies this as one of the facts that demonstrates the plausibility that Defendants used an ATDS. (Doc. 34, ¶ 50.)

Plaintiffs identified other facts demonstrating that it was plausible the messages were sent randomly with an ATDS, including that multiple people, fifteen in this suit alone, received messages sent by these Defendants. *Id.* Further, review of the exhibit to the SAC demonstrates the use of a random or sequential system. Repetitive messages in short time periods have been found to be evidence showing the plausibility of an ATDS. *Schley v. One Planet Ops, Inc.*, 445 F.Supp.3d 454, 459 (N.D. Cal. March 18, 2020). On several occasions, Plaintiff Joshua Champion received nearly identical messages within the same day. For example, on November 16, 2020, the following two messages were received:

> From number (502) 829-6111
> Your Credt Score, Recently Dropped- 2 DeIinquent Accounts
> Have Been Reported : Dispute By 11/l7 http://credithelp7.com/c16/qnCpkG

> From number (575) 552-0992
> Your Credt Score, Just Dropped : Two DeIinquent Accounts
> Were Reported : Dispute By 11/l7 http://credithelp17.com/c16/c-TZzd

(Doc. 34-1, entries 1010 & 1011.)

Its noteworthy that the messages misspelled "Credt" and used two different ways to convey numeric value: "2" in one message versus "two" in the other. The misspellings in these examples and in numerous other text messages quoted in the exhibit to the Complaint show the plausibility of Plaintiffs' ATDS claims. An automated device often uses misspelled words to make the texts look like they are coming from a person. They also misspell words to avoid spam filters that look for various keywords and phrases commonly found in spam. See e.g. *Why Scammers Make Spelling and Grammar "Mistakes,"* https://josephsteinberg.com/why-scammers-make-spelling-and-grammar-mistakes / (last accessed 10-17-22). If the numbers had been properly obtained, and not randomly generated, there would be no need to avoid a spam filter.

Also evident from viewing the messages outlined in the exhibit to the SAD is that the messages are not personalized or addressed to an individual in any way. That is inconsistent with the numbers coming from an internal database, which would have matched a name with the associated number to personalize the message. Numerous messages embrace their generic randomness and simply assume the recipient knows their own name. One example of this is the following message received by Plaintiff Asif Lundstrom on July 8, 2022, from an e-mail address that the caller id could not identify:

> F l N A L C H A N C E!! A court just lssued $287,539 in **your name**, but it needs to be c I a i m e d by, the end of the day: ddclyz.com/uXpvKkL 2358

See Doc. 34-1, entry 56. (emphasis added)

Generic or impersonal messages are associated with the plausible use of an ATDS. *Wilson v. Rater8, LLC*, 2021 WL 4865930 at 2 (S.D. Cal. Oct. 18, 2021);

*Schley v. One Planet Ops, Inc.*, 445 F.Supp.3d 454, 459 (N.D. Cal. March 18, 2020). In dealing with generic marketing calls, one Court has stated the following:

> Furthermore, the calls were generic in nature and served to market Allstate's insurance policies to Plaintiffs, who had no prior business relationship with Allstate. As a result, "there is no indication that [Allstate] had any reason to call [Plaintiffs'] phone number[s] aside from telemarketing purposes." Viewed in the light most favorable to Plaintiffs, as they must be at this juncture, these allegations plausibly allege that Allstate used an ATDS.

*Garner v. Allstate Insurance Company*, 2021 WL 3857786 at 4 (N.D. Ill. Aug 30, 2021).

Similarly, Plaintiffs in the present case also have no relationship to Defendants, further making it plausible that the impersonal messages were randomly and sequentially sent with an ATDS.

The messages in this case are also generic in that they do not contain the name of the sender or the entity on whose behalf the messages are sent. Indeed, the SAC alleges that the sender goes to great lengths to hide their identity, so much so that the goods and services advertised are only visible for a short time, as often within days the links redirected elsewhere to avoid detection. (Doc. 34, ¶ 46-47.) The messages also came from different numbers to avoid being blocked. (Doc. 34, ¶ 48.) However, the commonality of the substance and format of the messages show that it is plausible that the messages all came from the same source. And subpoena responses also indicate they came from the same source.

These facts show the plausibility of Plaintiffs' allegations that an ATDS was used. The probability is very high that an ATDS was used where thousands of

substantively-similar text messages were sent from thousands of different phone numbers, without any personalization, and without any identifying information.

Case law cited by Defendants is distinguishable. The plaintiffs in those cases either made conclusory allegations or stated facts showing that their telephone numbers were clearly not randomly generated. See *Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036 (9th Cir. 2012) (Debt collector called numbers identified through skip tracing of defaulting debtor); *Borden v. eFinancial, LLC*, 2022 WL 16955661 (9th Cir. Nov. 16, 2022) (plaintiff's complaint admitted that plaintiff signed up for a quote on a website); *Allison v. Wells Fargo Bank, N.A.*, 2022 WL 16955661 (S.D. Cal. Oct 18, 2022) (the complaint made conclusory allegations that simply recited the words of the statute where credit card company called its own customer regarding defaulted debt); *Anthony v. Pro Custom Solar, LLC*, 2022 WL 1634870 (C.D. Ca. Jan. 21, 2022) (plaintiff just recited the statute and failed to clarify whether the plaintiff was alleging an ATDS or a pre-recorded call); *Eggleston v. Reward Zone USA, LLC*, 2022 WL 886094 (C.D. Cal. Jan. 28, 2022) (complaint alleged that defendant's system made a random selection from an indexed database rather than generated the phone number).

### D. Review of the Text Messages Shows Highly Offensive Conduct Sufficient to Support Invasion of Privacy/Intrusion Upon Seclusion Claims

The tort of intrusion upon seclusion applies when a party intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns if the intrusion would be highly offensive to a reasonable person. See *Miller v. National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1482, citing Restatement Second of Torts, section 652B. Defendants'

Motion focuses incorrectly on just the number of texts as forming the basis of the

invasion of privacy claims. However, a quick review of the list of text messages at

issue shows numerous examples of messages that are highly offensive and

constitute a serious invasion of privacy. A non-exhaustive list of such messages

includes messages alleging that viruses have been detected on the user's phone,[3]

that credit accounts have been opened in the recipient's name,[4] that the water in the

recipient's city is contaminated,[5] and that the recipient's credit score had dropped.[6]

At least one message even implied the recipient was overweight.[7] These messages

are highly offensive, especially when unsolicited and sent by unknown individuals.

The messages preyed upon potential fears of the recipient, causing them to wonder

whether their phone had been infected with a virus, whether their identity had been

stolen by someone opening accounts in their name—potentially lowering their

---

[3] See Doc. 34-1, entry 31: -Virus-DETECTED: 5 Viruses found...Your mobiIe is not safe AII photos will be erased in 1 hour. CIick here to remove viruses-edwecr.com/iXpvKkL 0660

[4] See Doc.34-1, entry 35: -EXPRlAN Secure Msg: Two new accnts were opened using your name, dropping your scores 87 pts..CIose/Review by 7/26: ypmkdg.com/iXpvKkL 3705

[5] See Doc. 34-1, entry 51: The water in your city is contaminated & each resident is receiving $156,920- ogqjtb.com/hXpvKkL 5674

[6] See Doc. 34-1, entry 154: TRANSUN|0N Msg(s): Your (3) scores just dropped by 36 polnts on 1/1. VlEW changes, here, http://jnutrns3.com/fah/cTZz

[7] See Doc. 34-1, entry 135: 2O22 ResoIution - L0SE 28Ibs, in 3O days with this C0MPLlMENTARY fat-meIting piII http://slmjan22.com/hui/c-TZzd

credit score—or whether they were drinking dirty water, etc. Using the recipient's fear in this manner is highly offensive. Further, each message contained a link trying to drive traffic to commercial websites. As alleged in the SAC, those websites advertised various consumer goods and services. (Doc. 34, ¶ 44.) The attempt to gain financially by sending such messages is extremely offensive to a reasonable person.

Cases cited in Defendants' memorandum involved calls by debt collectors, not telemarketing through deceptive and fear-based appeals. For example, the *Burgess* case relied on by Defendants did not describe any offensive behavior, nor did it indicate that the calls were from unknown persons. Rather, it appears that the calls were from the party that had purchased debt that was owed by the plaintiff in that case. *Burgess v. Portfolio Recovery Assocs*., 2017 WL 2471802 (C.D. Ca. 2017). The Court only determined that the number of phone calls by a debt collector cannot by itself amount to an invasion of privacy/intrusion upon seclusion claim. *Id.* at 5. In the present case, which does not involve a debt collector, there are numerous examples of offensive messages sent for no other purpose than to solicit purchases. The *Burgess* court pointed directly to a situation in which an intrusion upon seclusion claim was allowed in a factual scenario similar to that alleged in Plaintiffs' Complaint. *Id.*, citing *Varnado v. Midland Funding, LLC*, 43 F.Supp.3d 985, 992 (N.D. Cal. 2014). In *Varnado*, the Court declined to dismiss an intrusion upon seclusion claim that alleged, among other things, deception, hidden identity of the caller and false sense of urgency. *Id.* at 989. These three factors are very similar to facts alleged in Plaintiffs' SAC in the present case. Nowhere did the *Varnado* Court find a magic number of calls that triggers liability.

When considering the offensiveness of the intrusion, Defendants' memo acknowledges that context, circumstances and motives matter. The context and circumstances as set forth in the SAC are that Plaintiffs are bombarded with messages from Defendants, who hide their identity, often in direct contravention to Plaintiffs' express wishes as demonstrated by their registration on the DNCR. Case after case cited by Defendants arise in the debt collection context, where there is generally some level of relationship between the parties and presumably at least an issue of outstanding debt. In contrast, Plaintiffs have no relationship to Defendants. (Doc. 34, ¶ 37.)

Defendants' motives are for financial gain. The links in the messages took the recipients to pages promoting consumer goods and services. (Doc. 34, ¶¶ 43-44.) However, even that fact was often hidden in the message itself. Many of the messages deceptively stated or implied they were giving money to the recipient. For example, on July 15, 2021, and July 16, 2021, the following messages were sent to Plaintiff Joshua Champion.

> Your town's giving each registered vehicIe owner a $2600 payment, on JuIy 16th. Reserve one by today, http://townqpay.com/p9p/c-TZzd

(Doc. 34-1, entry 439.)

> Your county's giving aIl drivers w/ a license in good-standing a $2236 refund on 7/17. Must confirm by, 7/16 http://paypauto.com/2*/c-TZzd_

(Doc. 34-1, entry 435.)

The links in each of these messages led to a web page designed to sell insurance. This financial motivation of parties invading Plaintiffs' seclusion, taken

together with the other factors set forth in the SAC—including that Plaintiffs did not know Defendants or give Defendants permission to contact them—demonstrates that the conduct alleged in the Complaint is highly offensive to a reasonable person. Further, it goes without saying, where fifteen different plaintiffs are suing the same parties for telephone spam, clearly the conduct is highly offensive.

**E.    The TCPA Authorizes Plaintiffs to Recover Damages for Both the Do Not Call Registry Violations and Failure to Identify Violations**

Plaintiffs received text messages that violated both (1) the National Do Not Call Registry regulations found in 47 C.F.R. § 64.1200(c), and (2) the "minimum standard" regulations found in § 64.1200(d). These are two separate regulations, each of which the FCC promulgated pursuant to 47 U.S.C. § 227(c). Plaintiffs' ability to recover damages *for each violation of the regulations,* and not just *for each text message,* is supported by the statutory text of the TCPA and case law.

To begin, it is important to understand that the TCPA contains two private rights of action. One private right of action covers any automated calls in violation of 47 U.S.C. § 227(b). The other private right of action covers any telephone solicitations in violation of 47 U.S.C. § 227(c). These two private rights of action provide as follows:

Under 47 U.S.C. § 227(b)(3)

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater

Under 47 U.S.C. § 227(c)(5)

A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater

Note that subpart (B) in both private rights of action is identical (except for the words "up to"). The question that must be answered is this: In Subpart B of both private rights of action, what does the phrase "each such violation" refer to? There are two possibilities. These subparts could authorize a person to bring:

> (B) an action to receive $500 in damages for each such violation **[of the regulations prescribed under this subsection]**,

> or

> (B) an action to receive $500 in damages for each **"telephone call in violation of the regulations prescribed under this subsection"**

(Emphasis added.)

19

In a case involving § 227(b)(3), the Eleventh Circuit found that "the phrase 'each such violation' in subpart (B) has no possible antecedent in the introductory paragraph, so it must refer to something from subpart (A). And the only phrase in subpart (A) that could be an antecedent for 'each such violation' is the phrase 'a violation of this subsection or the regulations prescribed under this subsection.'" *Lary v. Trinity Physician Financial & Ins. Services*, 780 F.3d 1101, 1105–06 (C.A.11 (Ala.), 2015) (cleaned up). Consequently, the Eleventh Circuit held, "the statute allows a person to recover '$500 in damages for each' 'violation of this subsection.'"

Because the phrase "each such violation" in § 227(b)(3)(B) must refer to "a violation of this subsection or the regulations," it is very likely Congress intended the same meaning in § 227(c)(5)(B). The wording in both private rights of action is identical (except for the phrase "up to"). There is zero plausible reason that § 227(b)(3)(B) allows a person to recover damages for **each violation of the regulations**, while § 227(c)(5)(B) would only allow a person to recover damages for **each call in violation of the regulations**.

Defendants cite to *Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 631 (C.A.6 (Ohio), 2009) where the Sixth Circuit held the TCPA "allows for statutory damages on only a per-call basis." The Sixth Circuit subsequently held "a person may recover statutory damages of $1500 for a willful or knowing violation of the automated-call requirements, § 227(b)(3), and $1500 for a willful or knowing violation of the do-not-call-list requirements, § 227(c)(5)—even if both violations occurred in the same telephone call." *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (C.A.6 (Ohio), 2011). Yet, both *Charvat* opinions are at odds with the Eleventh

20

Circuit's holding in *Lary*. As the Eleventh Circuit explained in *Lary*, the statutory authorization to recover damages for "each such violation" in subpart B necessarily refers to each such violation of the regulations.

The reasoning in *Lary* is further supported by two other TCPA provisions. First, in § 227(c)(5)(A), Congress authorized a person to bring "an action based on a violation of the regulations prescribed under this subsection to enjoin such violation." Here, the phrase "such violation" clearly refers to the antecedent "violation of the regulations." Because § 227(c)(5)(A) uses the phrase "such violation" to refer to "violation of the regulations," it is very likely Congress intended the same meaning in § 227(c)(5)(B). Second, if Congress only intended § 227(c)(5)(B) to authorize a person to bring "an action to receive up to $500 in damages for each such call," instead of for "each such violation," Congress knew how to do so and would have done so. See 47 U.S.C. § 227(g)(1) (providing that "whenever a State believes any person is engaging in telephone calls in violation of this section or the regulations, the State may bring a civil action to **enjoin such calls**, an action to receive $500 in damages for **each violation**, or both such actions." (Emphasis added; cleaned up).

In conclusion, the phrase "each such violation" in § 227(c)(5)(B) is ambiguous standing alone. However, every time Congress used the phrase "such violation" elsewhere in the private rights of action of § 227(b)(3) and § 227(c)(5), the phrase clearly meant "each such violation of the regulations." Further, when Congress wanted to authorize an action based on *calls*, instead of *violations of the regulations*, Congress knew how to and did so. For these reasons, Plaintiffs should be allowed to seek damages for each such violation of the regulations. Also, to

21

hold otherwise would create a perverse incentive for spammers like Defendants in this case: If they are already going to knowingly spam people on the DNCR, why bother disclosing their identity if there are no additional consequences.

If the Court follows *Charvat*[8] instead of *Lary*, Plaintiffs' causes of action should be understood as alternative pleadings. Alternative pleading rules allow a party to allege alternative theories of liability. See *Margarita Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Ca. 1999). A party need not use specific words to plead in the alternative as long as there is a reasonable inference that is what is being done. *Tillotson v. Valley Paving, Inc.*, 2008 WL 11387037 at 4 (E.D. Ca. 2008). At the pleading stage, plaintiffs are even allowed to plead equitable remedies as alternatives to legal remedies. See *Eason v. Roman Catholic Bishop of San Diego*, 414 F.Supp.3d 1276, 1282 (S.D. Ca. 2019). Assertion of inconsistent and alternative claims cannot be construed as a waiver of a plaintiff's rights to recovery under either claim. See *Olympic Coast Inv. Inc. v. Seipel*, 2006 WL 3431874 at 2 (9th Cir. 2006), citing *Ryan v. Foster & Marshall, Inc.*, 556 F.2d 460, 463 (9th Cir.1977). Alternative pleading of different TCPA claims from the same subsection has been recognized. *Engle v. Unified Life Ins. Co., Inc.*, 2014 WL 12508347, at *5 (S.D. Cal. Oct. 27, 2014).

---

[8] Defendants' Motion to Dismiss cites two other cases for the proposition that damages for violations of the regulations promulgated under 47 U.S.C. § 227(c) are only allowed on a per call basis and not a per violation basis. However, both cases simply accept the holding in *Charvat* with zero analysis. See *Heidorn v. BDD Mktg. & Mgmt. Co* and *Drew v. Lexington Consumer Advoc.*

### F.    Dismissal with Prejudice is Unwarranted

A dismissal with prejudice is a harsh sanction that is not to be invoked lightly due to public policy that cases should be disposed on their merits. *David v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978). In determining leave to amend, this Court has identified five factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Burtt v. Sunnova Energy Corp.*, 2022 WL 3574411 at 1 (C.D. Cal. July 29, 2022), citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) and *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020).

In this case, there has been no undue delay or bad faith shown. There have also not been any failures to cure prior deficiencies. The Court has not previously ruled on the validity of the SAC in this matter. The prior amendments to the SAC have not been the result of an involuntary dismissal. The first amendment was to name the John Doe Defendants whose identities were not initially known, while the second amendment was by agreement of the parties to narrow the causes of action. Further, dismissal with prejudice and without leave to amend is not appropriate unless the complaint cannot be saved by amendment. *Eminence Capital, LLC v. Aspeon*, 316 F.3f 1048, 1052 (9th Cir. 2003).

Absent prejudice or "a strong showing" of the other factors, there is a "presumption" in favor of leave to amend. *Id.* There has been no prejudice to Defendants shown. It is the burden of Defendants—as the party opposing amendment—to prove prejudice that they would suffer if amendment were

allowed. *Id*. Accordingly, the Second Amended Complaint should not be dismissed with prejudice. In the event that the Court grants any part of Defendants' motion, Plaintiffs should be entitled to amend the complaint.

## IV.   CONCLUSION

Plaintiffs have been inundated with spam text messages from Defendants and have provided a detailed listing of more than 1,700 of those messages in the SAC. That complaint describes how the sender of the messages hid their identities such that this action had to originally be filed as a John Doe case; but, after numerous subpoenas, Plaintiffs were able to amend the complaint to name Defendants. The SAC describes some of the methods Defendants used to try to evade liability for sending the spam. The SAC and incorporated exhibit listing the messages provides details that demonstrate that Plaintiffs' allegation that Defendants sent the messages using an ATDS was plausible. The SAC further alleges that Michael Boehm is a Defendant based on his own actions and not simply as an officer of a corporation. The SAC and incorporated exhibit show that the voluminous text messages that were sent were often highly offensive such that Plaintiffs have a valid cause of action for intrusion upon seclusion. All of these allegations are stated in a sufficiently clear manner that Defendants can easily respond to the SAC by filing an answer and proceeding forward. Accordingly, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint must be denied.

Dated: December 16, 2022

Respectfully Submitted,

/s/ *John Kauffman*
John Kauffman

## CERTIFICATE OF COMPLIANCE
## WITH LOCAL RULE 11-6.2

"The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6648 words, which [choose one]:

 _X_  complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated [date]."

Dated: December 16, 2022

/s/ *John Kauffman*

John Kauffman