NOSSAMAN LLP
DAVID C. LEE (SBN 193743)
dlee@nossaman.com
JENNIFER L. MEEKER (SBN 260138)
jmeeker@nossaman.com
JAMES H. VORHIS (SBN 245034)
jvorhis@nossaman.com
SETH M. GOLDSTEIN (SBN 232071)
sgoldstein@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone:  415.398.3600
Facsimile: 415.398.2438

Attorneys for Defendants MICHAEL BOEHM
and HOSTING RESPONSE, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOSHUA CHAMPION, ASIF LUNDSTROM, TODD HORNE, TONI KIRK, ROSIE CLARKE, BENJAMIN KELLEY, PETER RICHARDSON, TERESA ALLEY, SCOTT HALL, DENISE KING, TIA WEST, ERIC PETERSON, TAMMARRAH MORRIS, LYNN BROWN, and NICK MILLER,<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL BOEHM, and HOSTING RESPONSE, LLC,<br><br>Defendants. | Case No:   2:22-cv-05840-FLA-KS<br><br>Honorable Fernando L. Aenlle-Rocha<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date Action Filed:  August 26, 2022 |

Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Opposition"), like Plaintiffs' Second Amended Complaint ("SAC"), is long on rhetoric and short on the factual allegations necessary to establish their claims against Defendants. No matter how many times Plaintiffs accuse Defendants of being "among the worst spammers in the United States," complain about the (supposedly) "significant amount of discovery" they engaged in to identify Defendants, and assert that subpoena responses indicate Defendants sent the text messages Plaintiffs received, the SAC fails to state any claims against Defendants.

## I. THE SAC IS AN IMPERMISSIBLE SHOTGUN PLEADING

Plaintiffs concede that Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff suing multiple defendants to allege the basis of their claims against **each** Defendant and to establish the specific personal involvement of **each** Defendant in the alleged wrongful acts. Doc. 44 at 5. They claim to have satisfied this requirement, but this is simply untrue.

Plaintiffs use the omnibus terms "Defendants" and "Plaintiffs" throughout the SAC, without specifically identifying what each Defendant did to each of the 15 Plaintiffs or even whether each of the 15 Plaintiffs is asserting each cause of action against each Defendant. They attach a 191-page document to the SAC purporting to show that each of the 15 Plaintiffs received a certain number of text messages, ranging from two messages allegedly received by Plaintiffs Morris, Brown and Miller to 1,473 messages allegedly received by Plaintiff Champion, with each message each Plaintiff received appearing to be sent from a different telephone number or email address. Doc. 34-1.

The SAC alleges that unspecified subpoena responses "identified Boehm and Hosting Response as the sender" of the alleged texts (Doc. 34, ¶¶ 9, 51), but it is unclear whether each Defendant is alleged to be responsible for each message or whether one Defendant is alleged to be responsible for some messages and the other Defendant for the other messages (or some combination of the two). If the

former, it is unclear how subpoena responses from "phone companies, domain registrars, and affiliate networks" could identify both Defendants as the single "sender" of a text. Some or all of the messages allegedly violated 47 C.F.R. § 64.1200(a), some or all of them allegedly violated 47 C.F.R. § 64.1200(c)(2), and some or all of them supposedly allegedly 47 C.F.R. § 64.1200(d)(4), but it is unclear which messages allegedly violated which provisions. In support of a common-law privacy claim, the SAC alleges that the "volume" of text messages received would be offensive to any reasonable person, but many of the Plaintiffs cannot be said to have received a "volume" of messages (e.g., as noted, Morris, Brown and Miller allegedly received two each), so it is unclear whether all or only some of the Plaintiffs are asserting the privacy claim.

In sum, the SAC is an unclear mass of allegations that make it impossible for Defendants—or the Court—to determine which Plaintiffs are asserting which claims against which Defendants and what each Defendant allegedly did to each Plaintiff. It is the quintessential "shotgun" pleading and subject to dismissal under Rule 8 for that reason alone.

## II.     THE SAC FAILS TO ALLEGE BOEHM'S PERSONAL LIABILITY

Plaintiffs concede that an individual acting on behalf of a corporation may be held personally liable for violations of the TCPA only if that individual had direct personal participation in or personally authorized the conduct found to have violated the statute. Doc. 44 at 5. However, other than the allegations in the introductory section of the SAC that Mr. Boehm is a "professional spammer" who "own[s], control[s] and run[s]" Hosting Response, an "entity through which Boehm operates" and "personally … send[s] the spam" (Doc. 34, ¶¶ 10, 32), the SAC is devoid of any allegations about Mr. Boehm.

Plaintiffs fail to address any of the case law cited in the Motion demonstrating that such minimal and conclusory allegations are not enough to state a TCPA claim against a corporate officer. Doc. 43 at 14. Instead, they cite to a

single case—*Champion v. Credit Pros Int'l Corp.*, 2022 WL 3152657 (D.N.J. Aug. 5, 2022)—and imply it concluded that allegations similar to their allegations regarding Mr. Boehm were sufficient to state a claim against a corporate officer. Yet, they misrepresent the allegations regarding the officer in that case, which were far more substantial than Plaintiffs' allegations in this case. In *Champion v. Credit Pros Int'l Corp.,* Case 2:21-cv-10814-JXN-JBC (D.N.J. May 6, 2021), the plaintiffs alleged that the individual defendant (i) was president of corporate defendant, (ii) knew that corporation's telemarketing was in violation of the TCPA, yet continued to provide and/or approve the content of all marketing materials and text messages sent by corporation, (iii) was the face of corporation's marketing and, in marketing videos, told prospective clients of corporation that, instead of money, he just wanted their contacts, (iv) served as corporation's chief compliance officer, reviewed and approved of all marketing, and was personally responsible for corporation's compliance; and (v) failed to ensure corporation complied with TCPA even after corporation had been sued multiple times). *Champion v. Credit Pros Int'l Corp.,* Case 2:21-cv-10814-JXN-JBC (D.N.J. May 6, 2021), Doc. 1 (Complaint) at ¶¶ 5, 11, 16, 30.

  Here, Plaintiffs assert that they added Mr. Boehm to their suit based on his actions and not simply on his purported status as an officer of Hosting Response, but the SAC does not identify what these actions were. Plaintiffs point to their allegation that "subpoena responses specifically identified Boehm and Hosting Responses as the sender of the text messages." (Doc. 34, ¶¶ 9, 51). However, an allegation that a subpoena response "identifies" a defendant as having engaged in conduct is not an allegation that the defendant actually engaged in that conduct; proving that a document says a defendant did something does not prove that the defendant actually did it. Moreover, it is simply implausible that subpoena responses from "phone companies, domain registrars, and affiliate networks" would "identify" both Mr. Boehm and Hosting Response as the single "sender" of

a text or demonstrate a level of involvement by Mr. Boehm in the sending of a text sufficient to establish his personal liability for the text.

### III. THE SAC FAILS TO PLAUSIBLY ALLEGE USE OF AN ATDS

Plaintiffs concede that they must allege specific facts regarding the text messages they received that show that it is plausible an ATDS–i.e., equipment using a random or sequential number generator–was used to send those messages. Doc. 44 at 9. They claim the SAC includes such allegations, but none of the random assortment of "facts" they highlight provides a non-conclusory basis for their assumption that an ATDS was used. For example, Plaintiffs point to SAC's allegation that none of them had a relationship with Defendants or provided their telephone number to Defendants as indicating the use an ATDS. *Id.* at 11 (citing Doc. 34, ¶ 50). But this purported fact is just as consistent with the use of a list of marketing leads purchased from a third party or compiled from public sources as it is with the use of an ATDS. Indeed, the source the SAC cites for its contention that Defendants are among the worst spammers in the world (Doc. 34, ¶ 4) states that Hosting Response sends spam to "scraped lists," i.e., lists of telephone numbers that are not randomly or sequentially generated, but rather compiled or "scraped" from websites and other public sources. *See* https://spamhaus.org/statistics/spammers/ (last accessed December 22, 2022).

The other "facts" upon which Plaintiffs' base their ATDS allegation similarly fail to render that allegation plausible. Plaintiffs allege that the "15 Plaintiffs [] have all reported spam that was sent by Defendants," "when a recipient responded to the text message, no one replied," "each text message[] came from different phone numbers," and "the telephone numbers the texts came from are provided by Onvoy, Twilio, and Commio, each of which allows callers to configure and send automated text messages en masse." Doc. 34, ¶ 50. However, they fail to explain why these "facts" make it more likely that the texts came from

- 4 -
DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
61193918.v1

the same sender using an ATDS rather than one or more senders using a "scraped" or purchased list.[1]

Plaintiffs also ask the Court to look beyond the allegations of the SAC and to dig into their 191-page list of text messages in search of "facts" supporting their ATDS allegation. Alleging for the first time in the Opposition that repetitive messages in short time periods, messages with spelling errors, and "generic" messages are indicative of ATDS use, they point to a pair of similar text messages Plaintiff Champion allegedly received on November 16, 2020 and a text message Plaintiff Lundstrom allegedly received on July 8, 2022. Doc. 44 at 11-12 (citing Doc. 34-1). Again, however, they fail to explain why these "facts" demonstrate that the texts were sent using an ATDS rather than a purchased or "scraped" list.

## IV. PLAINTIFFS FAIL TO ALLEGE A HIGHLY OFFENSIVE INTRUSION

Plaintiffs claim the Motion focuses "incorrectly" on the number of texts Plaintiffs received as forming the basis of Plaintiffs' intrusion claims, but the **volume** of the messages is the only thing alleged to be offensive about them in the SAC. Doc. 34, ¶¶ 80-81. And, as demonstrated in the Motion, "call volume, without more, is insufficient to demonstrate conduct that 'would be highly offensive to an ordinarily reasonable person.'" *Rector v. Wells Fargo Dealer Servs.*, No. CV 13–5288 DSF (MANx), 2014 WL 12603205, at *2 (C.D. Cal. May 12, 2014).

Plaintiffs appear to concede that receipt of an unwanted call or text or even a number of unwanted calls or texts does not give rise to a cause of action for

---

[1] Even assuming that responding to a text and not receiving a reply indicated that the text was sent using an ATDS, Plaintiffs fail to explain how allegations that Plaintiff Champion responded to 10 messages and did not receive replies demonstrates that the other 1,600+ messages he and other Plaintiffs purportedly received from other telephone numbers were sent using an ATDS.

intrusion upon seclusion. Instead, they assert for the first time in the Opposition that the content of some of the messages they received was highly offensive. Doc. 44 at 15. They point to five messages—three texts received by Plaintiff Lundstrom, one advising him a virus had been detected on his phone, one advising him a credit account had been opened in his name, and one advising him his city's water was contaminated, and two messages received by Plaintiff Champion, one advising his credit score had dropped and one advertising a weight-loss pill—that they claim are "highly offensive" because, according to Plaintiffs, they "prey[] upon the potential fears of the recipient" and "contain[] a link trying to drive traffic to commercial websites." However, run-of-the-mill warnings, advertisements and solicitations are not so "highly offensive to a reasonable person" as to support a common law claim for invasion of privacy. *See, e.g., Shadlich v. Makers Nutrition LLC,* No. 8:20-CV-389-T-60CPT, 2020 WL 5255133, at *2–3 (M.D. Fla. Sept. 3, 2020) (dismissing common law privacy claim based on receipt of 98 unwanted telemarketing calls). Plaintiffs cite no authority suggesting otherwise.

Indeed, Plaintiffs cite only one case concluding that a plaintiff had successfully stated a claim for intrusion upon seclusion, but the allegations there bear no resemblance to what Plaintiffs allege here. In *Varnado v. Midland Funding, LLC*, 43 F.Supp.3d 985, 988-89, 992 (N.D. Cal. 2014), the plaintiff alleged that defendants called her home and mobile phones continuously and incessantly for months, including on nights and weekends, and including 3 to 5 times a day in June and July 2013 (totaling approximately 185 to 300 calls in those months alone), making threatening statements and leaving threatening messages, notwithstanding her repeated requests for the calls to stop. Here, of the 15 Plaintiffs, only Champion alleges he received anywhere near as many texts as the *Varnado* plaintiff alleged she received phone calls, and none of the Plaintiffs allege the type of disruptive and threatening conduct at issue *Varnado*. Accordingly, none of the Plaintiffs has adequately alleged intrusion upon seclusion.

## V. PLAINTIFFS ARE LIMITED TO ONE AWARD OF DAMAGES PER TEXT IN VIOLATION OF § 227(C)(5)

As every court to have considered the question has concluded, the plain language of 47 U.S.C. § 227(c)(5) limits a plaintiff to one award of damages per call in violation of § 227(c), not one award per violation of § 227(c) per call. *See, e.g., Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 631-32 (6th Cir. 2009); *Drew v. Lexington Consumer Advoc.*, No. 16-CV-00200- LB, 2016 WL 9185292, at *10 (N.D. Cal. Aug. 11, 2016), *report and recommendation adopted*, 2016 WL 9223901 (N.D. Cal. Sept. 2, 2016); *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, No. C-13-00229 JCS, 2013 WL 6571629, at *16 (N.D. Cal. Aug. 19, 2013), *report and recommendation adopted*, No. 13-CV-00229-YGR, 2013 WL 6571168 (N.D. Cal. Oct. 9, 2013); *see also Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 365 n. 5 (E.D. Pa. 2019) ("This Court concludes that this language of § 227(c)(5) anticipates a plaintiff receiving $500 per call that is in violation of § 227(c), and not $500 per violation per call."), *aff'd*, 805 F. App'x 156 (3d Cir. 2020).

Plaintiffs do not attempt to address or distinguish any of this authority.[2] Instead, they urge the Court to "follow" *Lary Trinity Physician Fin. & Ins. Serv.*,

---

[2] Plaintiffs falsely assert that *Heidorn* and *Drew* simply accepted the holding in *Charvat* without analysis. Doc. 44 at 22 n.8. In fact, neither *Heidorn* nor *Drew* relied on *Charvat* for their conclusions that the language of § 227(c)(5) allows for damages only on a per-call basis. *Heidorn* reached this conclusion after performing its own independent analysis of the statutory language. *See Heidorn*, 2013 WL 6571168, at *3–4 (N.D. Cal. Oct. 9, 2013) (noting that (1) § 227(c)(5)(B) provides two options for damages—"actual monetary loss from such a violation, or … $500 in damages for each such violation, whichever is greater"—and if the greater amount had been plaintiff's actual monetary loss, it would be absurd to conclude that Congress intended for Plaintiff to receive twice his actual loss for one phone call, and (2) if Congress had intended to allow for multiples of statutory damages if one call violated multiple provisions of § 227(c), it would have drafted language to explicitly provide for that); *Heidorn*, 2013 WL 6571629, at *16 ("The plain

780 F.3d 1101, 1105-06 (11th Cir. 2015), in which the Eleventh Circuit held that 47 U.S.C. § 227(b)(3) allows a person to recover statutory damages for each violation of 47 U.S.C. § 227(b). There are two problems with Plaintiffs' exhortation. First, it is not at all clear that *Lary* reached the correct conclusion. *See, e.g., Martin v. PPP, Inc.,* 719 F. Supp. 2d 967, 974–75 (N.D. Ill. 2010) (holding that § 227(b)(3) does not signal any intent to compensate plaintiffs for multiple violations in a single call and plaintiff was therefore entitled to recover only once for each call received in violation of § 227(b)(3)); *see also Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 n. 6 (5th Cir. 2008) (noting that § 227(b)(3) allows statutory damages per offending fax).

Second, even assuming *Lary* did reach the correct conclusion, it is not at odds with *Charvat* and other cases construing § 227(c)(5), as it deals with a different statutory provision using different language to establish a different private right of action. *Compare* § 227(c)(5) ("A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may ... bring ... an action ... to receive up to $500 in damages for each such violation...."), *with* § 227(b)(3) ("A person or entity may ... bring ... an action ... to receive $500 in damages for each such violation ...."). Indeed, *Lary* itself recognized that, unlike § 227(b)(3), other subsections of the TCPA—such as § 227(c)(5) which Plaintiffs invoke here for their Second and Third Causes of Action—"suggest that damages should be awarded per 'call.'" *Lary,* 780 F.3d 1101 at 1106 (citing *Charvat*). Accordingly, Plaintiffs' Prayer for Relief must be dismissed to the extent it seeks one award of damages for a text's alleged violation of 47 C.F.R. § 64.1200(c)(2)

---

language of the statute … indicates that a telephone call that violates more than one provision of the regulations is considered to be a single violation rather than multiple violations."). *Drew* agreed with the reasoning in *Heidorn. Drew*, 2016 WL 9185292, at *10.

and a second award of damages for the same text's alleged violation of 47 C.F.R. § 64.1200(d)(4), or construed as seeking one award of damages for a text's alleged violation of 47 C.F.R. § 64.1200(c)(2) and/or § 64.1200(d)(4).

## VI. THE SAC SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs have had two opportunities to amend their claims, but have failed to cure the aforementioned deficiencies. Moreover, for the reasons stated above, any further attempt to amend would be futile. Indeed, although Plaintiffs ask for leave to amend in the event Defendants' motion is granted, they do not identify the amendments they would make or explain how such amendments would state a claim. Under these circumstances, dismissal with prejudice is appropriate.

## VII. CONCLUSION

For the reasons stated in the Motion and above, Defendants respectfully request that the Court grant their Motion and issue an order dismissing the SAC and all causes of action stated therein with prejudice.

Date:    December 23, 2022

NOSSAMAN LLP
DAVID C. LEE
JENNIFER L. MEEKER
JAMES H. VORHIS
SETH GOLDSTEIN

By: /s/ *Seth Goldstein*
      Seth Goldstein

Attorneys for Defendants
MICHAEL BOEHM and HOSTING RESPONSE, LLC